IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| JASON SHEARER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-05031-CV-SW-MDH-SSA |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Before the Court is Plaintiff Jason Shearer's appeal of Defendant Social Security Administration Commissioner's ("Commissioner") denial of his application for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff exhausted his administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the administrative law judge's (ALJ) decision is not supported by substantial evidence in the record as a whole and the decision is reversed and remanded.

# BACKGROUND

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434 (Tr. 154-55). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration ("SSA"). Plaintiff's claim was denied initially (Tr. 80-84). On January 4, 2019, following a hearing, an administrative law judge ("ALJ") found that Plaintiff was not under a "disability" as defined in the Act (Tr. 11-26).

The ALJ found that Plaintiff had severe impairments that included degenerative joint disease of the left shoulder, anxiety or social anxiety, bipolar disorder, adjustment reaction or unspecified adjustment disorder, dysthymia, various personality disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), attention-deficit/hyperactivity disorder ("ADHD"), obsessive-compulsive disorder, autism spectrum disorder, and Tourette's Syndrome (Tr. 13-15). However, the ALJ found that he did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1 (Tr. 15-18).

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). He can occasionally push or pull with the left upper extremity; can perform no climbing of ladders, ropes, or scaffolds; can occasionally reach overhead with the left upper extremity; can make simple work-related decisions; can maintain concentration, persistence, and pace for two hours at a time for simple tasks; can understand, remember, and carry out simple work instructions and procedures; can adapt to changes in the work setting that are simple, predictable, and easily explained; and work where there is occasional and superficial interaction with coworkers, supervisors, and the public (Tr. 18-19). The ALJ found that Plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including light and unskilled work as a blade balancer and packing header (Tr. 25). Consequently, the ALJ found that Plaintiff was not disabled (Tr. 26).

**STANDARD**

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal

standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

**DISCUSSION**

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issues in this case are:

1. Whether the ALJ properly evaluated medical opinion evidence; and
2. Whether substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity due to a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. See 42 U.S.C. § 423(d). The Supreme Court in *Barnhart v. Walton*, 535 U.S. 212 (2002), upheld the Commissioner's interpretation of this statutory definition, which requires that the disability, and not only the impairment, must have existed or be expected to exist for twelve months.

**1. The ALJ's evaluation of medical opinion evidence did not provide sufficient evidence to support the RFC.**

As part of his consideration of the record to determine Plaintiff's mental limitations, the ALJ considered medical opinion evidence from a variety of sources, including non-examining state agency psychologist, Scott Brandhorst, Psy.D., and consultative examiner, James Carpenter, Psy.D. (Tr. 22-23). The ALJ also considered opinions from Plaintiff's treatment providers at Ozark Center, including Beverly Vanover, L.P.C., Mandy Basford, M.S.W., L.C.S.W., and Tanna Feldman, D.O. (Tr. 23). The ALJ concluded that Plaintiff was not disabled due to his mental impairments, but that he was able to make simple work-related decisions; maintain concentration, persistence, and pace for two hours for simple tasks; understand, remember, and carry out simple

work instructions and procedures; adapt to simple, predictable, easily explained changes; and have occasional and superficial interaction with coworkers, supervisors, and the public. (Tr. 18-19). In coming to this conclusion, the ALJ stated that he could only give "little weight" to the opinions of Plaintiff's treating mental health providers at the Ozark Center, Beverly Vanover, LPC, Mandy Basford, LCSW, and Tanna Feldman, DO. (Tr. 24).

Plaintiff argues that the ALJ erred by giving little weight to the opinions of Plaintiff's treatment providers at Ozark Center, including Dr. Feldman, and in doing so, failed to set forth good reasons and substantial evidence to support his reasoning. Plaintiff argues that the ALJ failed to cite and inconsistencies with the medical evidence to discount these medical opinions.

In June 2017, Ms. Vanover completed a form and indicated Plaintiff would miss four days of work per month, would be off-task twenty-five percent or more of the work period, and had marked and extreme limitations in several listed work-related mental functions (Tr. 23, 379-80).

In October 2018, Ms. Feldman wrote a letter setting forth Plaintiff's diagnoses and stated that Plaintiff "struggles significantly with these disorders in his daily life." (Tr. 23, 1514-15).

In April 2018, Dr. Feldman completed a form and indicated Plaintiff would likely miss four days of work per month, would be off-task twenty-five percent or more of the work period, and that he had marked and extreme limitations in most listed work-related areas of mental functioning (Tr. 23, 962-63).

The ALJ considered and gave little weight to the opinions of Ms. Vanover, Ms. Basford, and Dr. Feldman (Tr. 23). In doing so, the ALJ found each opinion was inconsistent with Plaintiff's activities of daily living (Tr. 23). Plaintiff's activities include cooking meals for his girlfriend and her children, caring for his dog, completing household chores including laundry and making minor repairs, driving, shopping in stores and by computer, attending church, playing softball, mowing,

5

caring for his mother who has dementia, participating in art contests, and going to the zoo (Tr. 20, 22-23, 56-58, 60, 188-93, 197, 292, 300, 335, 595, 1011, 1015-16, 1041, 1052-53, 1166, 1183, 1669).

The ALJ additionally reasoned that Ms. Vanover and Basford were not acceptable medical sources under the regulations applicable to this case (Tr. 23). Nurse practitioners and therapists "are specifically listed as 'other' medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairments on the claimant's ability to work." *Lacroix v. Barnhart,* 465 F.3d 881, 887 (8th Cir. 2006) (citing 20 C.F.R. § 404.1513(d)(1)). Evidence provided by "other sources" must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record. *See id*. at 886–87*; see also Raney v. Barnhart,* 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.") (citation omitted)); *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015).

A treating acceptable medical source's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. 20 C.F.R. § 416.927(c)(2). When the ALJ does not give the treating source's opinion controlling weight, the regulations still require that an ALJ "always give good reasons" for the weight afforded to a treating physician's evaluation. *Id*. The regulations further explain the factors an ALJ must consider when determining the weight given to a treating source opinion: (1) The examining relationship; (2) The treatment relationship; (3) How well the opinion is supported; (4) The consistency of the opinion with the record as a whole;

6

(5) The specialization of the source; and (6) Other factors which tend to support or contradict the opinion. 20 C.F.R. §416.927(c); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

Even if the ALJ finds that the treating opinion is not due controlling weight, the ALJ must give good reasons for the weight given to a treating doctor's opinion whether he gives great or little weight to the opinion. *See* 20 C.F.R. § 404.1527(c)(2); *See also Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016). The ALJ's duty to "give good reasons" for the weight given requires explanation in his written decision, "with some specificity." *Walker v. Commissioner, Social Security Administration*, 911 F.3d 550, 553 (8th Cir. 2018) (citing *Singh v. Apfel*, 222 F.3d 448. 452 (8th Cir. 2000)). The ALJ's decision should be clear regarding the weight the ALJ gave to an opinion and why that weight was assessed. *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008).

Further, a review of the treating source opinion requires consideration of the treatment records from the plaintiff's other mental health providers and evaluating whether they corroborate the claimant's impairments. *See Monroe v. Colvin*, 2015 WL 135441, at * 13 (W.D. Mo. March 23, 2015). The Eighth Circuit, in *Shontos v. Barnhart*, looked at the claimant's mental health treatment and the "team approach" that her providers implemented when providing mental health treatment. *Shontos*, 328 F.3d at 427. In that case, the claimant's treating clinical psychologist for two months, and two treating non-acceptable therapists from the same mental health treatment facility submitted disabling opinions. *See Id*. at 425-426. The Court recognized that two of these opinions were from non-acceptable medical sources. *Id*. at 426. However, the Court also concluded that the opinions offered by three of the claimant's treatment providers that were part of her treatment team were significant because they provided a longitudinal perspective of the claimant and they were consistent with each other. *Id*. This was considered substantial evidence that supported the treating source opinion in that case. *Id*.

Like in *Shontos*, Plaintiff had a treatment team at the Ozark Center. The evidence shows that Plaintiff began treatment at the Ozark Center with Dr. Owen, but later began therapy with Ms. Vanover while Dr. Owen continued medication management. (Tr. 365, 1214). Subsequently, Plaintiff was transferred to medication management with Dr. Feldman and individual therapy with Ms. Basford. (Tr. 1115, 1183). The treatment records reflect therapy and medication management from these providers at the Ozark Center between March 2017 and October 2018 for a cumulative of over sixty appointments. This is sufficient to provide a longitudinal perspective of Plaintiff's mental impairments.

Additionally, like in *Shontos,* the opinions of Dr. Feldman, Ms. Vanover, and Ms. Basford are in concert, in that they are disabling. Dr. Feldman and Dr. Vanover's opinions stated that Plaintiff would be off-task 25 percent or more during an 8-hour workday and would be absent four days per month. (Tr. 369, 962). Further, these opinions assessed moderate to extreme limitations in his ability to perform work functions due to Plaintiff's mental impairments. (Tr. 369-370, 962-963). In addition, Ms. Basford submitted a statement that Plaintiff struggled "significantly" with autism, obsessive-compulsive disorder, and Tourette's syndrome. (Tr. 1515). Therefore, these opinions from Dr. Feldman, Ms. Vanover, and Ms. Basford, and therefore their treatment notes and opinions should be considered together when evaluating the opinion evidence.

The opinions offered by Dr. Feldman, Ms. Vanover, and Ms. Basford "reflect [ ] clinical judgments of professionals who had interacted with and observed [Plaintiff] over time. Their opinions and evaluations were based on a longitudinal perspective of [Plaintiff]. The opinions of these mental health care providers were consistent." *Shontos*, 328 F.3d at 426. The ALJ did not address the consistency between these opinions and their support for Dr. Feldman's treating source opinion. *See Tummons v. Astrue*, 2012 WL 6115528, at *8 (W.D. Mo. Dec. 10, 2012) (remand

required when the ALJ did not discuss the consistency of the opinion of the non-acceptable sources with the opinion of the acceptable sources in the file). Additionally, because the ALJ did not consider these opinions as from a treatment team, the ALJ inappropriately dismissed the opinions of the therapists because they were provided by not acceptable medical sources. *See Shontos*, 328 F.3d at 426.

The ALJ also discounted these opinions by stating that the opinions were inconsistent with Plaintiff's daily activities. (Tr. 23). The ALJ noted daily activities including cooking meals, caring for his dog, completing household chores, shopping, and going to the zoo. (Tr. 23). The ALJ's classification of Plaintiff's daily activities relies on a mistake classification and overstatement of Plaintiff's abilities. The Eighth Circuit has explained that "[i]n evaluating a claimant's RFC, consideration should be given to the quality of the daily activities…and the ability to sustain activities, interests, and relate to others *over a period of time*…and the frequency, appropriateness, and independence of the activities must also be considered." *Leckenby v. Astrue,* 487 F.3d 626, 634 (8th Cir. 2007) (internal quotations and citations omitted) (emphasis in original). Here, Plaintiff's ability to sustain activities was impacted by his mental impairments. For example, while Plaintiff testified that he was able to go in public on a limited basis, he further reported he would wear headphones as a coping mechanism and would still have a tic attack from built-up anxiety. (Tr. 46, 61). Even when spending time at a family gathering, he reported he had intense tics in the car afterward. (Tr. 1126). Although he reported the limited ability to cook meals and complete household chores, he also reported having difficulty with maintaining a simple routine including preparing meals daily. (Tr. 1073).

Treatment records document Plaintiff's tics (Tr. 1042-1043) Plaintiff experienced vocal tics and motor movements during medication management; (Tr. 1086) Plaintiff exhibited

significant tics upon examination; (Tr. 1111) Plaintiff exhibited worsening tics during his therapy session; (Tr. 1122) Plaintiff's tics were frequent and loud during his therapy; (Tr. 1165) Plaintiff presented with jerking movements and vocal tics;); poor concentration (Tr. 364) Plaintiff presented with tangential thought process; (Tr. 1076) Plaintiff presented with mildly impaired concentration upon examination; (Tr. 1082) Plaintiff presented with impaired attention and concentration and disorganized thought; (Tr. 1098) Plaintiff presented with impaired attention and concentration); depression (Tr. 364) Plaintiff presented at medication management with depressed mood and blunted affect; (Tr. 1194) Plaintiff presented with restricted and labile affect; (Tr. 1218) Plaintiff appeared with flattened affect upon evaluation); and anxiety (Tr. 364, 1043, 1082, 1098, 1137, 1218) Plaintiff presented with anxious mood upon examination).

Plaintiff argues that the ALJ failed to discuss any inconsistencies between Dr. Feldman's opinion and the medical evidence. The ALJ discussed medical examination findings that show Plaintiff is typically oriented in all spheres (Tr. 16, 264, 271, 275-76, 290, 294, 326, 331, 364, 436, 453, 484, 492, 513-14, 574, 580, 593, 725, 945, 988, 995, 1019, 1057, 1098, 1137, 1165, 1194, 1218, 1221, 1256-57, 1272, 1361, 1540, 1545, 1714, 1785, 1953); has intact memory (Tr. 16, 264, 294, 364, 374, 453, 580, 599, 988, 1019, 1082, 1116, 1156, 1194, 1211, 1221, 1278, 1361); has more normally, organized, linear, or goal-directed thought processes (Tr. 16, 271, 275, 295, 374, 453, 580, 725, 1057, 1098, 1204, 1218, 1221, 1278, 1361); that he is consistently cooperative (Tr. 17, 264, 271, 275, 374, 436, 453, 513, 574, 581, 583, 1057, 1082, 1165, 1185, 1204, 1211 1221, 1256, 1263, 1540, 1545); and that he has mild to moderately impaired concentration observed by treating providers (Tr. 17, 1057, 1076, 1082, 1098), but no problems with concentration observed on mental status examinations (Tr. 271, 275, 295, 364, 374, 453, 580, 737, 1116, 1137, 1156, 1211, 1218, 1221, 1278, 1361). The ALJ also noted observations of poor judgement that usually occur

at the beginning of psychiatric hospitalizations (Tr. 17, 555, 600, 725, 738, 740, 907), but at least fair judgment by the end of Plaintiff's hospital stays (Tr. 271, 276, 364, 453, 584, 970, 977, 984, 1019, 1082, 1098, 1116, 1137, 1156, 1194, 1211, 1221, 1279, 1361). Furthermore, the ALJ considered testing that showed average IQ and average memory (Tr. 16, 1165, 1171).

The ALJ considered additional medical opinion evidence from non-examining state agency physician, Dr. Brandhorst (Tr. 18). Dr. Brandhorst reviewed the available evidence in May 2017, and concluded that Plaintiff had no limitations in the four broad areas of mental functioning (Tr. 18, 75-76). While the ALJ gave some weight to Dr. Brandhort's opinion, he recognized that additional evidence received since this doctor's review supported greater mental limitations (Tr. 18).

The ALJ also considered and gave significant weight to the opinion of consultative examining physician, Dr. Carpenter, who examined Plaintiff in April 2017, and concluded that Plaintiff seemed able to understand and remember instructions, sustain concentration and persistence on tasks, interact socially and adapt to his environment, and make good money management decisions (Tr. 22, 373-74). In giving significant weight to Dr. Carpenter's opinion, the ALJ reasoned that it was supported by his largely normal examination (Tr. 374); was consistent with Plaintiff's good response to treatment for Tourette's syndrome (Tr. 1081)) and was consistent with Plaintiff's activities of daily living as set forth above (Tr. 22-23). The ALJ may properly give the examination and conclusions of a consultative examiner "considerable weight" over that of a treating physician where the consultative physician's assessment is better supported and consistent with the evidence of record. See Toland v. Colvin, 761 F.3d 931, 937 (8th Cir. 2014).

Notably, although the ALJ indicated some instances of improvement with medication, the treatment notes as a whole revealed at most the "unpredictable course of mental illness," which is

something that an ALJ is required to consider when evaluating the impact of mental impairments. *See Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001); *see also Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2015) (finding that the ALJ erred by failing to acknowledge the unpredictable and sporadic nature of the claimant's symptoms). For example, while Plaintiff reported improvement with some issues to Dr. Owen in June 2017, the next month his therapist advised him to present to the emergency room because of his muscle spasms and twitching. (See Tr. 1184, 1175). Similarly, the ALJ indicated in March 2018 Plaintiff reported some improvement in his Tourette's syndrome. (See Tr. 22). However, Plaintiff subsequently noted to present with significant tics and more tics than had been observed in several weeks. (Tr. 1086, 1063). The Eighth Circuit has held that some improvement in mental health during treatment does not mean that an individual can sustain work-related functions. *Hutsell*, 259 F.3d at 712 (stating that "'doing well' for the purposes of a treatment program had no necessary relation to a claimant's ability to work or to her work-related functional capacity").

Plaintiff also required medication adjustments to control his symptoms, but his symptoms of obsessive-compulsive disorder, autism, Tourette's syndrome, and anxiety continued to affect his ability to function. (Ex: Tr. 1101) Dr. Feldman increased Plaintiff's dosage of Trazadone, Zoloft, and Vistaril and started a prescription of Zyprexa; (Tr. 1117) Dr. Feldman increased Plaintiff's dosage of Gabapentin and continued his other medications; (Tr. 1212) Dr. Owen began a prescription of Prozac, increased Plaintiff's dosage of Buspar, and continued his other medications). *See Porter v. Colvin*, 2015 WL 3843268 *6 (W.D. Mo. June 22, 2015) (stating that "need for ongoing changes to her prescription regimen suggests that even with treatment, her symptoms were not under control"). These treatment records support the sources' opinions that

Plaintiff suffered from moderate to extreme limitations in understanding and memory, concentration and persistence, social interaction, and adaption.

The ALJ did not support the conclusion that only "little weight" was due to the limitations found in the opinions of the Ozark Center providers, Dr. Feldman, Ms. Vanover, and Ms. Basford. The ALJ should have considered the consistency of these three opinions when assessing the weight they deserved. *See Tummons*, 2012 WL 6115528 at *8-9. Had the ALJ given more weight to the opinions of the Ozark Center providers, a finding of disability may have been required. (See Tr. 67-68, 962-963, 379-380) the vocational expert testified that even if a person was off-task only 15 percent of the workday, he would be unable to maintain competitive employment, whereas Dr. Feldman and Ms. Vanover opined Plaintiff would be off-task 25 percent of the workday). Because the ALJ erred in assessing the opinion evidence, remand is required.

2. **The ALJ failed to properly consider Plaintiff's subjective reports.**

Plaintiff argues that the ALJ's analysis of Plaintiff's subjective reports consisted of the statement that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 19). Plaintiff asserts that remand is required because the ALJ's determination relied on a mistaken classification of the record, overlooked relevant evidence, and did not address factors that bolstered Plaintiff's credibility.

SSR 16-3p, 2016 WL 1119029, at *12 fn. 1 (Soc. Sec. Admin. March 16, 2016) eliminated the term "credibility" and clarified that "subjective symptom evaluation is not an examination of an individual's character." Rather, the decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated". *Id.* at *9; *see also Martsolf v. Colvin*, 2017 WL 77424, at *5 (W.D. Mo. Jan. 9, 2017).

13

The ruling also incorporates the regulations, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and identifies the factors to be considered when assessing a claimant's allegations. Specifically, the ALJ should consider a claimant's daily activities; the nature, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; and the type of medication and other treatments or measures used for the relief of pain and other symptoms. *Id.*

The evaluation of Plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." Ulman v. Comm'r of Soc. Admin., 693 F.3d 709, 713–14 (6th Cir. 2012). Part of the RFC determination includes an assessment of the consistency of Plaintiff's subjective complaints. See Bryant v. Colvin, 861 F.3d 779, 782 (8th Cir. 2017). The ALJ may discount complaints of pain and limitation if they are inconsistent with the evidence as a whole. See Chaney v. Colvin, 812 F.3d 672, 677-78 (8th Cir. 2016); Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014). An ALJ is in a better position to evaluate credibility and the court will defer to that evaluation when supported by good reasons and substantial evidence. Id. at 994.

To determine the consistency and extent of Plaintiff's alleged limitations, the ALJ discussed a variety of factors and evidence, including Plaintiff's testimony and allegations (Tr. 19), objective examination findings and observations regarding Plaintiff's mental and physical medical impairments (Tr. 16-17, 19-22), treatment measures and effectiveness of such treatment, including evidence that Plaintiff's Tourette's syndrome improved with treatment (Tr. 18, 21, 995, 1081), activities of daily living (Tr. 16-18, 20-22), and medical opinion evidence (Tr. 18, 22-23).

After weighing all evidence, the ALJ concluded that Plaintiff had the RFC to perform a range of light work with additional postural, mental, and social limitations. (Tr. 18-19). The ALJ accounted for Plaintiff's physical limitations by limiting him to light work with limitations on

pushing, pulling, climbing, and reaching (Tr. 18-19). The ALJ accounted for Plaintiff's mental limitations by limiting him to simple work-related decisions; maintaining concentration, persistence, and pace for two hours at a time for simple tasks; understanding, remembering, and carrying out simple work instructions and procedures; adapting to simple, predictable, and easily explained changes in the work setting; and occasional and superficial interaction with coworkers, supervisors, and the public (Tr. 18-19).

Plaintiff states that the ALJ's reasons for discounting Plaintiff's subjective reports are founded on a mistaken classification of the records. First, the ALJ pointed to improvement in Plaintiff's Tourette's syndrome to support his dismissal of Plaintiff's subjective reports. However, the ALJ's classification of Plaintiff's Tourette's syndrome is unsupported by a review of the evidence. The ALJ relied on an appointment in March 2018, in which Plaintiff reported improvement in his tics. (Tr. 21). However, subsequent records reveal an increase in his tics. (See Ex. Tr. 1041, 1048) Ms. Basford noted an increase in Plaintiff's tics in May 2018). The last appointment Plaintiff had with his neurologist, Dr. Cooper, showed that Plaintiff reported his medications helped somewhat, but Dr. Cooper also increased Plaintiff's dosage of Tetrabenazine at that appointment due to his tics. (Tr. 987, 989). Additionally, mental impairments are unstable and often wax and wane, therefore it is not unusual that there would be some period of improvement followed by an increase in symptoms. *Freeman v. Colvin*, 2016 WL 4620706, at *5 (W.D. Mo. Sept. 6, 2016).

The objective findings during Plaintiff's treatment are inconsistent with the ALJ's findings as to Plaintiff's reports. Here, Plaintiff's mental treatment notes include observations that he appeared with anxious mood; depressed mood; restricted, flattened, labile, and blunted affect; tangential thought process; impaired attention and concentration; and verbal and physical tics. (See

(Tr. 364, 1042-1043, 1082, 1098, 1137, 1156, 1194, 1210-1211, 1218). Plaintiff consistently participated in medication management, therapy, and case management services at the Ozark Center between March 2017 and October 2018 for a total of over 60 appointments. Additionally, Plaintiff was hospitalized on multiple occasions related to his mental health. (Ex. Tr. 262, 275) Plaintiff admitted for anxiety and cutting his legs to cope with his symptoms; (Tr. 1220, 1222) Plaintiff was admitted to Stephens Unit for increased anxiety, cutting himself, intrusive thoughts, and some homicidal ideations).

Plaintiff further argues that contrary to the ALJ's conclusion, Plaintiff's daily activities supported his allegations. The ALJ considered Shearer's daily activities including his ability to participate in an art contest, socialize with family, attend his daughter's graduation, cook meals, do household chores, and complete personal hygiene. (Tr. 21-22). The ALJ erred on two fronts. First, the Eighth Circuit has explained that "[i]n evaluating a claimant's RFC, consideration should be given to the quality of the daily activities…and the ability to sustain activities, interests, and relate to others *over a period of time…*and the frequency, appropriateness, and independence of the activities must also be considered." Leckenby v. Astrue, 487 F.3d 626, 634 (8th Cir. 2007) (internal quotations and citations omitted) (emphasis in original). Here, Shearer's ability to sustain activities was impacted by his mental impairments. For example, while Shearer testified that he was able to go in public on a limited basis, he further reported he would wear headphones or draw to stay calm in those situations. (Tr. 46). And even using those coping techniques, Shearer still had to leave the play he attended to stay calm and when he would be in public, he would have a tic attack from built-up anxiety. (Tr. 61). Shearer also reported being able to manage anxiety during a family gathering, but he had intense tics in the car afterward. (Tr. 1126). He reported having difficulty with maintaining a simple routine. (Tr. 1073). Further, Shearer's limited ability to engage

16

in activities of daily living does not conflict with his statements of disabling limitations. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("This court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.").

Although an ALJ is not required to discuss each and every medical record in exhaustive detail, the Eighth Circuit has held that remand is required where it cannot be determined if the ALJ properly considered the record. *Willcockson v. Astrue*, 540 F.3d 878, 879-80 (8th Cir. 2008) ("…we conclude that we must remand because we cannot determine from the written decision whether the ALJ properly reviewed the evidence."). Furthermore, an ALJ may not "pick and choose only evidence in the record buttressing [his] conclusion" while ignoring contrary evidence. *See Taylor v. o/b/o McKinnies v. Barnhart*, 333 F.Supp.2d 846, 856 (E.D. Mo. 2004). Although an analysis of the claimant's subjective statements is for the ALJ to make, the ALJ must still support his conclusions with substantial evidence. *Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir. 2005). The Court finds that that the ALJ's analysis of Plaintiff's subjective statements was not supported by substantial evidence, and it cannot be determined if the ALJ in this case properly considered the record as a whole in his analysis. Accordingly, remand is required.

## CONCLUSION

For the reasons set forth in this order, the Court finds that the determination of the ALJ in the underlying case was not supported by substantial evidence. Accordingly, it is **ORDERED** that the case be remanded for a new administrative hearing and the Commissioner's determination denying Plaintiff's application for disability insurance benefits is reversed.

**IT IS SO ORDERED.**

Dated: July 13, 2021          */s/ Douglas Harpool*
                              **DOUGLAS HARPOOL**
                              **United States District Judge**